LEASON CHANDLER et al., appellants,

*v.*

WILLIAM H. BIRKHOLM, respondent.

1. The account of a special guardian, appointed in chancery to sell the real estate of an infant, will be restated on the petition of the sureties upon her bond.

2. The guardian in this case was a widow, entitled to dower in the lands sold.—*Held,* that she could not lawfully increase the liability of her sureties on the bond given by her in the proceedings of sale, by voluntarily relinquishing her right of dower.

On appeal from a decree advised by Vice-Chancellor Bird.

Hans C. Birkholm, a resident of Middlesex county, died August 3d, 1856, seized of a farm in the township of South Amboy, containing one hundred and thirty-three acres, lying on both sides of the road. He left a widow and one child, William H. Birkholm, then about two months old. Hannah A. Birkholm, the widow, a few years after the death of Birkholm, married Charles H. Wardell.

In January, 1867, Mrs. Wardell applied to the court of chancery for leave to sell part (about thirty-six acres) of the farm, on the ground that the farm was subject to a mortgage of $1,000 and interest; that the infant was unable to pay the interest; that the sale of the thirty-six-acre tract would pay off the mortgage and leave the rest of the property clear from all liens and encumbrances.

The Master reported that the interests of the infant would be promoted by the sale, and that the value of the land proposed to be sold was $1,500.

Mrs. Wardell was appointed special guardian, and gave bond in the sum of $3,000. Leason Chandler and Alonzo Rose, the latter now deceased, were her sureties, and sale was ordered. The interest of the infant in the property was sold by Mrs. Wardell

to Leverett Smith for $2,295, she having released her dower without compensation. She reported the sale in February, 1868. And in March she was ordered to convey the property, and that so much of the proceeds as should remain after payment of the expense thereof and of the application and the purpose for which the application was made, be put at interest &c.

Smith, the purchaser, paid out of the purchase-money the mortgage for $1,000 and $490 interest thereon, the back taxes for seven years, and arrears of taxes on the whole farm up to 1868, about $400 ; the balance due on a note for $200 and interest, held by Elizabeth Lamberson, and given to John Buckelew for work in repairing the Birkholm house on the part of the property not sold. This note was given by Mrs. and Mr. Wardell ; he paid, too, a bill of $38 for household furniture for Mrs. Wardell ; the balance he paid to her.

Mrs. Wardell paid $175 to William H. Posten for part of the balance due on a note given by Hans C. Birkholm, deceased, and he did not insist on the payment of the rest of the debt. These payments seem, with the costs and expenses (for no counsel fees were charged), to have used up all the purchase-money.

The special guardian never made any further report until April, 1884, when she charges herself with the whole amount of the proceeds of the sale, and does not pray allowance at all on any accounts.

Leason Chandler, the surviving surety and the executor of Alonzo Rose, his co-surety, applied to the court of chancery, by petition, for a restatement of the accounts and proper allowances to be made &c. Under that petition a reference was made to W. P. Voorhees to take the accounts, and he reported there was due the sum of $1,963.09.

The petitioners excepted to the report. The exceptions were overruled, and the report confirmed by Vice-Chancellor Bird, who filed the following conclusions :

The Master, in this case, was directed to report the true amount of the proceeds of sales made by Hannah A. Wardell as special guardian, and the interest with which she should be·

charged thereon, and whether the interest should be compounded, and at what rate. He was also directed to allow to her all just and lawful payments out of the said proceeds of sale. His report shows that he found that the proceeds of sale were $2,380, and that she was entitled to a credit against that sum for the costs of the sale, $75.17, and for a mortgage which was upon the premises, at the time, of $1,000 of principal, together with seven years' interest at the rate of six per cent. per annum. He also allows her the sum of $4 for making a survey of the premises, and for advertising, $2.25.

A sale of these lands took place in the year 1868, at which time the infant was only about twelve years of age.

For the sake of certainty, I will consider the exceptions in their order. The first one is as to the amount with which the guardian is charged for the lands sold. In my judgment, the Master is right in finding that the consideration was $2,380. It seems there was a great preponderance of testimony in this direction.

The second exception is as to the calculation of interest upon the mortgage. The Master allowed six per cent. for seven years, when the insistment is that it should have been seven per cent. The mortgage bears date about the year 1857, at which time the statutory provision was six per cent. The Master seems, therefore, to have complied with the requirements of the law.

The third exception is as to the rejection of a note given by the husband of the guardian and the father of the ward to one Posten, for $200. This note was of long standing. There is nothing to show that there was any relation whatsoever, by any manner of contract, agreement or understanding, that it should be a lien upon the land. The father and maker of the note had been dead several years when the land in question was sold. When he died he left, as I understand the testimony, both real and personal estate. At that time the son was of tender years, and it was the duty of every one interested in him, or in the estate of which Hans C. Birkholm died seized, to see to it that the debt was discharged in a proper and a lawful manner. If a court of equity can tolerate such indifference and laches, when

Chandler v. Birkholm.

infants are interested, then, indeed, such courts had better dis-claim and abandon all interest or regard for the welfare of those whom the law pronounces incapable of managing their own affairs. It was the duty of Posten, in a reasonable time, to enforce the claim of his note against the estate of Hans C. Birk-holm, deceased. After such reasonable time he took all the risk and responsibility upon himself. It was the duty of Mrs. Birk-holm, now Mrs. Wardell, to see to it that the estate which her husband left was applied to the proper payment and discharge of all lawful claims against it, and that, too, within a reasonable time. And if she neglected to perform this duty according to the requirements of the law, and afterwards took upon herself any responsibility by assuming the payment of claims or obliga-tions against her former husband, she did so at her peril. Who can say now but that there was an abundance of personal prop-erty to satisfy and discharge this note? Or who can say now but there was an offset, which might be clearly established, or some other defence, equally good in the law, to this note? There-fore, how can any court come to the conclusion that it may not do greater injustice to the ward by allowing this claim than to any other party by disallowing it? The very clearest and strongest proof in such cases is necessary to raise an equity.

The fourth exception insists that the Master was in error in rejecting the taxes paid out of the proceeds of the sale for the years 1857, 1858, 1859, 1860, 1861 and 1862. Now, it appears that these taxes were assessed upon this real estate, and paid in the first instance into the public treasury by the collector at the request of Mrs. Wardell, the accountant, upon promises by her that she would afterwards make sale of the same property and re-imburse him. It also appears that he was a friend of Mrs. Wardell. Now, in my judgment, what has been said respecting the payment of the note applies with equal force to the taxes. How can the court tell, at this distant period of time, what was included in these assessments? But when it is remembered that here were about ninety acres of farm land which Mrs. Wardell had the control and management of, and having such manage-ment, it must be conceded that it was her plain duty to keep

down all such accruing liens. No one, in attempting to do justice between the parties, would be inclined to say that equity is upon her side and against her infant son. If the court were to open the door to such charges after such a lapse of time, and under such circumstances, clearly there could be no limit to the carelessness, indifference or laches assigned to those who have the care of infants' property and the custody of their persons. As I understand the law, if any class of individuals is held to a strict account, it is that class which controls, whether by assumption, as a volunteer, or by direction of a court, and involuntarily, the property and estates of infants. The true rule simply requires every person, whatever be the relation, who meddles with the estate of infants, to be on his guard, and to be prepared to show, by accounts, that he has done faithfully.

The fifth exception is to the effect that the Master has rejected her claim for money expended in repairs. This must necessarily come under the same category. The reasoning which I have expressed above is especially applicable here. Mrs. Wardell may, in every just sense, be regarded as the tenant, and as having control of the premises as such for her son; it was most manifestly her duty to see to it that the premises were maintained and kept in repair out of the proceeds of the land.

The sixth exception is, like the fourth, directed to the action of the Master respecting taxes. The Master rejected the claim for taxes for the three years, 1863, 1864 and 1865, when it is insisted that they were an equitable charge upon this land. And the same may be said of the seventh exception, which respects the taxes of 1866 and 1867. The taxes for the first three of these years clearly could not be enforced upon the land; the two years, within which they could be enforced by the statute, having expired. And as to the two succeeding years, from the evidence, the taxes were not assessed, that is, the premises were not so described in the duplicate as to render them liens upon the land, and, therefore, they could not be enforced. But, supposing that the taxes were lawfully assessed against the land, and that the land could have been sold in order to raise the amount of the taxes under the statute in such case made and provided, then

there is nothing to take the case out of the principle laid down in *Cool* v. *Higgins, 8 C. E. Gr. 308.* In such cases, as I under-stand the law, it must affirmatively appear as specially provided for in the conditions of sale, and when not so provided for, con-tinues to be a lien upon the premises. See the case last cited, and also the case between the same parties, but another suit, *10 C. E. Gr. 117.* So that if the great uncertainty which has ex-isted in my mind, as to the taxes for the earlier years, should be overcome by the fact that the taxes for the last two years are so recent as not to involve either uncertainty or gross negligence, I find the authorities stand in the way of allowing them, even upon equitable grounds, for it does not appear that the purchaser had any assurance that the taxes had been paid, or that they would be paid out of the proceeds of the sale. Besides, what has been said respecting taxes under the fourth exception is equally applicable.

The views thus expressed render it unnecessary that I should speak of the eighth exception, because that is practically founded upon what is contained in all the preceding ones.

The exception which insists that Mrs. Wardell was entitled to be allowed the same interest in these moneys, that she would have been entitled to in the land as widow, cannot be sustained. Manifestly, she, in the fullest and clearest sense, relinquished such right. The court cannot now, on its own motion, create a con-sideration for that act. It was a gift to her infant son, and as binding as though she received a full equivalent.

The charge of compound interest by the Master, which is the subject of the tenth exception, is according to the law.

The next and last material exception is to the refusal of the Master to allow commissions. When I consider the delay, the vexation, the embarrassment, and the expense which this proceed-ing has imposed upon the ward, I am convinced that it has cost him enough without paying commissions. I fear that to allow commissions, in such cases, would be for the court to invite care-lessness and waste on the part of every trustee.

The exceptions on the part of Mrs. Wardell should be over-ruled, with costs.

The exception on the part of the ward, to the refusal of the Master to allow interest on certain moneys with which Mrs. Wardell had been given credit, I think should also be over-ruled, with costs.

*Mr. C. T. Cowenhoven* and *Mr. Robert Adrain*, for appellants.

*Messrs. W. Strong & Sons*, for respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

By an order of the court of chancery, made in 1867, Hannah Ann Wardell, as guardian of her infant son, William H. Birkholm, was ordered to sell certain lands of said infant. The sale was made in pursuance of said order. The said guardian filed no account of the proceeds of said sale until 1884. By her account then filed she charged herself with the whole amount of the proceeds of said sale, without claiming allowance for her disbursements. Suit was thereupon instituted in the supreme court against herself and her sureties on the bond given by her on her application to sell the said infant's lands.

A petition was then filed on behalf of the said sureties praying that the account of said guardian might be opened and restated.

The case is here on appeal from the decree of the court of chancery, on exceptions to the Master's report.

In the first place, the guardian must be charged with the proceeds of the sale of said lands. In respect to the amount for which the land was sold, there is a dispute. In the deed made by the guardian, the consideration named is $2,380. The purchaser cannot state accurately what the purchase-price was, but thinks it was over $2,300.

The report of sale made by the guardian under oath, immediately after the sale, shows that the lands were sold for the sum of $2,295. The sale was duly confirmed. That report, I think, should be regarded as the more reliable evidence, and the accountant will be charged with the sum of $2,295, instead of $2,380.

The disbursements to be credited will be as follows:

The mortgages on said premises amounting, without interest, to $1,000, and the interest thereon, which were paid out of the proceeds of sale.

In the court below, interest was allowed at six per cent. The evidence shows that seven per cent. was paid. By an act approved March 28th, 1862 (*P. L. of 1862 p. 314*), seven per cent. was the lawful rate of interest in Middlesex county. The interest must be calculated at six per cent. prior to March 28th, 1862, and at seven per cent. thereafter.

There must be an allowance also for the following items: Taxed costs of proceedings to sell lands, $75.17; expenses of surveying, $4; advertising, $2.25; taxes for the year 1866, $35.66; taxes for the year 1867, $58. These taxes were a lien on the lands, and were paid out of the purchase-money.

Hannah Ann Wardell, the guardian, was entitled to dower in said lands. By the order of sale it was directed that, if she would join in the sale and release her dower right, she should be entitled to such reasonable sum out of the proceeds of sale as the Chancellor should direct.

In her report of the sale, the guardian says:

"That the purchaser had agreed to pay $2,295 for the interest of the said infant in said premises, and that the said consideration, when received by her, will not be chargeable with the value of her right of dower, she having agreed, by writing delivered by her prior to the sale, to join in the same and to release her right of dower, and that said lands were sold free from her right of dower, she releasing all claims and right whatever to and in said lands."

The case is left in some obscurity by the time that has elapsed since the sale, and by the neglect of the guardian for so long a period to render any account.

It seems quite clear, however, that the sum reported by the guardian was the amount for which the property was sold, including her right of dower. The Master to whom it was referred before the order for sale was granted, reported that the value of the property was $1,500. It is not probable that it would have produced $2,295, subject to the widow's dower.

The report of sale by the guardian expressly states that she had released her right of dower, and that the premises were sold free from her dower. The sum of $2,295 must, therefore, have represented the entire value of the property. She would not have been permitted to make a private bargain with the purchaser as to the sum she should be paid for her dower, nor to settle for herself what portion of the proceeds of the sale she should take in lieu of her dower. There is no evidence to show that she did or attempted to do that.

Her release of her dower appears to have been voluntary and without consideration. The effect of her release of dower was to enlarge the liability of the sureties without their consent. They engaged, when they signed the bond, to be sureties for the due care by her of the proceeds of sale of the estate of the infant in the lands. They assumed no obligation with respect to the estate of the widow in the premises, and she could not, by her release, impose that enlarged liability upon them.

The sureties have a right to deduct from the proceeds of sale the value of her right of dower, to be calculated according to the rule which at the time of the sale prevailed in the court of chancery.

There were two mortgages upon the premises, each for $500. The first was executed by Frederick Hennel, before the premises were conveyed to Hans C. Birkholm. The other was executed by Hans C. Birkholm and Hannah A., the accountant.

In estimating the value of her dower, these mortgages must be taken into account.

After these credits are allowed, the balance remaining will be small. In view of the consideration that it is impracticable to keep such small sums of money constantly at interest, the account in this case should not be charged with compound interest.

The appellant should have his costs in this court and in the court below out of the fund.

The decree below should be reversed and the record remitted, that an account may be taken as herein directed.

Chandler *v.* Birkholm.

PATERSON, J.   I think the judgment below should be re-
versed, not only in the particulars indicated in the opinion just
read, but also throughout.   There can be no doubt but what the
taxes from 1857 to 1865, inclusive, were paid out of the proceeds
of the sale made by the special guardian, and being imposed on
the whole farm, and not on that sold only, clearly were for the
benefit of the infant.   Part of the property was sold to save the
rest, and that was the object of the application.   Unless I am
mistaken, that was done; and, in my opinion, equity, and espe-
cially what is developed in the circumstances of this case, does
not require that the appellee, as a minor, having been benefited
by the discharge of the encumbrances at the time of sale, should
be allowed, at this time, to receive a second advantage, by hold-
ing these sureties responsible for moneys expended and applied
in the manner shown here.   No dower had been assigned, and
she was not liable, under the decision of this court, to keep down
taxes or make repairs.   Besides, if she was required to do these,
it is evident she could charge for the care and maintenance of the
infant, and there is nothing in the evidence to show that he could
have been kept out of the net profits and income of the farm,
but rather the contrary.   Suppose the plantation had been rented
for $200 a year, which is as much as any of the witnesses say
was the rental value, could the infant have been maintained out
of that, and repairs made and taxes paid ?   And if not, and the
sale of part of his inheritance paid off the debts, prevented the
whole from being sacrificed at a forced sale, and gave him a
home during his minority, it is plain that his interest was bene-
fited, and these taxes are a just allowance.   It seems to me that,
in the absence, or even the appearance, of malfeasance on the
part of the special guardian, the touchstone to this matter is in
the fact that the moneys were expended in such a way and for
such purposes as have resulted clearly to the advantage of the
minor.

So, too, with regard to the Posten note.   That was an obliga-
tion given by the father of the respondent, upon which money
was raised to repair the Birkholm house.   The personal property
had been exhausted, and the lien on the real, under the situation,

could be construed very fairly to remain as against the heir,. until a sale had been made on account of him while a minor, or by himself after attaining majority. But, in any aspect, I fail to comprehend the equity, or justice, or law, that would compel the sureties of his mother to respond at this late date for money borrowed and expended by the father in preserving the home-stead.

When these allowances are made, an apparent balance against the accountant will remain of about $115; no more than sufficient for commissions, charges and expenses of settlement. There is nothing to warrant a non-allowance of the former. Her conduct merits commendation rather than censure. The money obtained from the sale was applied to the discharge of claims and encumbrances against the estate of which the respondent was sole heir. This was the intention, and Mr. Morgan says the balance was so small that he would ask no fee. That fact is significant. Besides, the value of the right of dower of Mrs. Birkholm, even on the supposition of her having signed the mortgage, would be ample to extinguish this balance, for a court could not hold sureties liable under any circumstances for that. These proceedings would seem to be taken for some purpose other than accounting and settlement. I am very clear in the opinion that the bondsmen should not be charged for any of the moneys for which their principal is sought to be held liable.

*Decree unanimously reversed.*